# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AHMED ELSHAFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 5349 |
| ) | Magistrate Judge Nan R. Nolan |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This a social security disability case. The parties consented to the jurisdiction of the Magistrate Judge. Cross-motions for summary judgment are pending. For the reasons that follow, Plaintiff's Motion for Summary Judgment or Remand [13-1] is denied, and the Commissioner's Motion for Summary Judgment [15-1] is granted.

## BACKGROUND

Elshafe was born on September 1, 1964. (R. 68). He completed high school and two years of college in Egypt. (R. 37). Elshafe was diagnosed with lymphoma of the left jaw in June of 2000. (R. 39, 147). He underwent chemotherapy treatment between August 2000 and December 2000. (R. 40). On February 16, 2001, a CT scan showed that Elshafe had minimal thickening of the major fissure of his right lung. (R. 236). Otherwise, his chest, abdomen, and pelvis scans were normal. Id. His gallbladder, spleen, pancreas, adrenals, and kidneys were normal in appearance. Id. On February 6, 2001, Elshafe denied any complaints with the exception of some abdominal discomfort and cramping on and off. (R. 222).

On February 24, 2001, Nicholas D. Kokonis, Ph.D. a clinical psychologist, examined Elshafe

and diagnosed a possible adjustment disorder with mixed anxiety and depressed mood. (R. 186). Dr. Kokonis opined that Elshafe did not demonstrate any stigmata of mental illness, delusions, hallucinations, or clinical depression. Id.

On February 26, 2001, Michael K. Raymond, M.D., an examining physician, evaluated Elshafe's mental and physical condition. (R. 188-92). Elshafe complained of "generalized poor energy with a feeling of abdominal swelling and bowel changes as well as altered taste and sporatic headaches." (R. 188). Dr. Raymond noted that Elshafe demonstrated normal ranges of motion in his spine and joints. (R. 190). He had normal active bowel sounds, his spleen and liver were not enlarged, and he had no abdominal masses. Id. Elshafe showed no focal neurological deficits, he had a normal gait, and he had a normal ability to grasp and manipulate objects. Id. His speech was audible and understandable. Id. He was alert and oriented to person, place, and time. Id. His memory, appearance, behavior, ability to relate during the examination, and affect were normal. Id. Elshafe was appropriate, polite, pleasant and cooperative and able to relate a clear, concise, coherent medical history without apparent cognitive difficulties. Id. Dr. Raymond noted that a recent CT scan of Elshafe's abdomen was normal. (R. 191). He surmised that Elshafe's complaints of generalized fatigue and abdominal bloating with change in bowels was likely related to chemotherapy treatment. Id.

In April 2001, a biopsy of Elshafe's mouth tissue was benign and showed no malignancy. (R. 283). On June 25, 2001, Dr. Bassam Matar of Swedish Covenant Hospital noted that Elshafe's lymphoma was "in remission." (R. 227). On October 8, 2001, Dr. Matar noted that Elshafe complained of fatigue but showed no signs of nausea, vomiting, fever, chills, or weight loss (R. 228). Dr. Matar further noted the possibility of lymphoma recurrence. Id. On December 27, 2001,

a biopsy of Elshafe's left buccal mucosa (the inner lining of the cheeks and lips) showed no signs of malignancy. (R. 286).

Elshafe filed an application for benefits on September 6, 2000, alleging disability since September 2, 1999 because of lymphoma, headaches, and depression. The ALJ found that Elshafe engaged in disqualifying substantial gainful activity as a cook from April 1999 to July 2000. R. 20. The ALJ applied the familiar five-step disability analysis and found that Elshafe had not engaged in substantial gainful activity since his application date of September 6, 2000 (step one); that his condition was severe (step two); but that it did not qualify as a listed impairment (step three). The ALJ determined that Elshafe retained the residual functional capacity (RFC) to perform a limited range of medium work.[1] Specifically, the ALJ found that despite his limitations, Elshafe retained the residual functional capacity to perform work-related activities which do not require lifting more than 50 pounds occasionally or more than 25 pounds frequently, frequently speaking, more than routine changes, and understanding, remembering and/or carrying out more than simple, unskilled instructions. (R. 21). The ALJ concluded that Elshafe was able to perform his past relevant work (step four).[2]

## DISCUSSION

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, it is determined that he or she can also do sedentary and light. 20 C.F.R. § 416.967(c).

[2] The Commissioner correctly points out that the ALJ's decision contains a harmless error regarding the identification of Elshafe's past relevant work. The vocational expert's testimony indicated that Elshafe was able to perform his unskilled work as a package handler for UPS but not his skilled work as a cook. (R. 65). The ALJ incorrectly stated that Elshafe could return to his work as a cook, when she should have stated only the package handler job was consistent with his residual functional capacity. (R. 23, 24).

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently gainfully employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is able to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 416.920(a)(4); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

Elshafe raises five main challenges to the ALJ's decision: (1) the ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence because the ALJ improperly failed to give sufficient weight to Elshafe's complaints of fatigue, pain, and depression and disregarded Elshafe's complaints of headaches; (2) the ALJ made an improper credibility assessment; (3) the ALJ improperly disregarded the Vocational Expert's testimony; (4) the ALJ erred in suggesting Elshafe need not call corroborating witnesses; and (5) the ALJ erred in failing to consider a closed period of benefits. None of Elshafe's arguments warrant reversal or remand.

A.  Residual Functional Capacity

Elshafe challenges the ALJ's RFC assessment. The RFC is a description of those work activities a claimant can perform despite his limitations. Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). In assessing the claimant's RFC, the ALJ must consider both the relevant medical and nonmedical evidence in the record. See 20 C.F.R. § 416.945(a)(3). The ALJ determined that Elshafe retained the RFC to perform work-related activities which do not require lifting more than 50 pounds occasionally or more than 25 pounds frequently, frequently speaking, more than routine changes, and understanding, remembering and/or carrying out more than simple, unskilled instructions. (R. 21).

Elshafe argues that the ALJ failed to give sufficient weight to his complaints of fatigue, pain, and depression and improperly disregarded his complaints of headaches. The ALJ did not fail to give sufficient weight to Elshafe's complaints of fatigue, pain, and depression and did not ignore his complaints of headaches, but rather considered his complaints in light of the other evidence before her. In her decision, the ALJ detailed Elshafe's complaints. The ALJ explicitly acknowledged that "[t]he claimant reports that he is fatigued and confused and has constant

headaches." (R. 21). The ALJ then reviewed the medical records relating to Elshafe's complaints of fatigue and headaches. The ALJ noted that Elshafe complained of fatigue and occasional headaches, among other things, at an internal medicine consultative examination on February 26, 2001. (R. 21). The ALJ further noted that the examining physician opined that Elshafe's complaints of generalized fatigue was likely related to chemotherapy treatment. (R. 21, 192). The ALJ next noted that Elshafe returned to Swedish Covenant Hospital on June 25, 2001 fearing that the lymphoma had returned because of his malaise, but that the report states that the lymphoma is in remission. (R. 21, 227). The ALJ also noted that an October 8, 2001 report from Swedish Covenant Hospital indicates that Elshafe complained of increased fatigue and that a recurrence was possible. (R. 22, 228).

Moreover, the ALJ analyzed the evidence with respect to Elshafe's allegations of depression. (R. 22). The ALJ discussed the results of the psychological consultative examination on February 21, 2001. (R. 22, 183-86). The ALJ noted that the clinical psychologist concluded that Elshafe may have an adjustment disorder with mixed anxiety and depressed mood. (R. 22, 186). The ALJ also noted that Elshafe had reported difficulties with sleep and an overall stress and unhappiness. Id. The ALJ indicated that the psychologist found that Elshafe did not demonstrate any stigmata of mental illness, delusions or hallucinations, and clinical depression. Id. The ALJ noted that the report stated Elshafe was friendly, alert, and oriented with adequate adaptive functioning. Id. Finally, the ALJ noted that the clinical psychologist found that Elshafe's "overall posturing was that of a rather guarded, defensive man who gave slow and seemingly calculated answers." (R. 22-23; 183).

The ALJ also discussed a February 26, 2001 internal medicine consultative examination at which Elshafe was found alert and oriented in all 3 spheres. (R. 22, 190). The examining physician observed that Elshafe's memory, appearance, behavior, and ability to relate during the examination were normal. Id. His affect was normal. Id. Elshafe was appropriate, polite, pleasant, cooperative, and able to relate a clear, concise, coherent medical history without apparent cognitive difficulties. (R. 190). Elshafe's overall effort and cooperation were excellent. (R. 22, 190).

The ALJ then considered Elshafe's complaints. The ALJ stated: "The claimant testified that he takes naps 3 times a day, lasting 3-4 hours and that this condition has not improved since chemotherapy ended. He argues that he experiences pain and headaches . . . . He testified that he no longer does any household activities." (R. 23). The ALJ noted that Elshafe takes no prescription pain medication despite his complaints of pain and headaches. Id Lastly, the ALJ considered Elshafe's complaints in the residual functional capacity assessment by limiting the skill required and constant change in the workplace. Id.

The ALJ's RFC determination is supported by substantial evidence. None of the doctors who examined Elshafe imposed any specific limitations on his activities post-chemotherapy because of fatigue, pain, depression or headaches. Furthermore, the medical consultant who reviewed Elshafe's records opined that he could meet the exertional requirements of medium work. (R. 176). Moreover, on April 9, 2001, Jerrold Heinrich, Ph.D, noted the diagnosis of an adjustment disorder with mixed anxiety and depressed mood, but found that Elshafe "retains the mental capacity to follow short and simple instructions consistently. He needs a job within an organized and repetitive work setting. His social skills are adequate for basic interactions. He adapts slowly to changes; he needs a job without frequent changes in daily routine. Within noted limitations the claimant retains

the behavioral capacity to do simple tasks." (R. 209). Dr. Heinrich's opinion is consistent with the ALJ's finding that Elshafe's RFC is limited to jobs that do not require more than routine changes and understanding and remembering and/or carrying out more than simple, unskilled instructions. It is the ALJ's job to evaluate and weigh the evidence. Because the ALJ considered the relevant evidence and reasonably formulated the RFC in the light of the evidence in the record, the Court will not substitute its judgment for the ALJ's.

B.     Credibility Finding

The ALJ found Elshafe's allegation of total disability not credible. An ALJ's credibility determination is entitled to "special deference" and will be reversed only if it is "patently wrong." Scheck v. Barnhart, 357 F.3d 697, 703 (7th Cir. 2004); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility analysis is largely correct save two harmless errors. As Elshafe argues, the ALJ improperly based his credibility finding in part on Elshafe's divorce, new relationship and the birth of his girlfriend's baby. The ALJ stated that Elshafe's recent divorce, new relationship and baby indicate that his "allegations of constant fatigue and inability to perform exertional activities and activities of daily living may be exaggerated;" yet, the new relationship began and the baby was conceived months before the cancer diagnosis. Moreover, Elshafe testified that he cared for the baby on only one occasion with a friend while his girlfriend was at work. (R. 48-49). The fact that Elshafe was divorced in November 2001, had a girlfriend, and his girlfriend and he had a baby conceived before his diagnosis does not cast doubt on his credibility and is not evidence of increased functional capacity.

Though the ALJ erred in this part of her credibility assessment, that error was harmless because the remainder of her determination was supported by substantial evidence. For example, the

ALJ did not reject Elshafe's credibility merely because he had a son. Rather, the ALJ found that his inconsistent statements about the amount of weight he could lift detracted from his believability as a witness.[3] The ALJ's reason for discounting Elshafe's testimony on this basis is supported by the record. The ALJ also considered the success of the chemotherapy treatment in controlling Elshafe's lymphoma. (R. 22). The ALJ noted that Elshafe currently took no prescription pain medications despite his complaints of pain and headaches. (R. 23). Elshafe testified that he takes over the counter Tylenol and Advil to relieve his headaches. (R. 42-43). Elshafe's reliance on over the counter medications to manage his headaches supports the ALJ's credibility findings. See Donahue v. Barnhart, 279 F.3d 441, 444 (7th Cir. 2002) (evidence that claimant "relied for pain control on over-the-counter analgesics" supports conclusion that pain is not disabling.); Powers, 207 F.3d at 435-36 (reliance on drugs not intended to treat severe pain suggests claimant may be exaggerating condition). The ALJ noted that Elshafe's reported activities of daily living were inconsistent with his claim that he is disabled. (R. 23). On February 20, 2001, Elshafe reported that he lived alone, could prepare his own meals two to three times a day, leaves the house twice a week to visit friends and/or keep appointments, and has friends visit him at home a couple of times a week for an hour or two. (R. 23, 127, 128, 134). He testified that he can shower and dress himself. (R. 50-51).

Finally, the ALJ noted that the objective medical evidence was inconsistent with Elshafe's claim of total disability. (R. 22). With the exception of Dr. Jajeh, none of the physicians concluded that Elshafe has limitations which preclude him from performing the limited range of medium work

---

[3] Elshafe testified that he could lift only four to five pounds but then admitted that he could lift his 18 pound baby. (R. 48). Contrary to Elshafe's argument, the ALJ did use the fact that he could pick-up his 18 pound son as evidence that he could lift 50 pounds occasionally or 25 pounds frequently.

found by the ALJ. Dr. Jajeh's note dated September 12, 2000 does not establish that the ALJ's credibility determination was erroneous. In that note, Dr. Jajeh stated that Elshafe developed a severe side effect to chemotherapy and was "unable to care for himself or work." (R. 169). The objective medical evidence in the record reveals no residual functional limitations from Elshafe's cancer. In June 2001, Dr. Matar noted that Elshafe's cancer is in remission. He noted Elshafe's complaints of fatigue, but offered no definable cause. Elshafe has not experienced recurrent cancer and is no longer being treated with chemotherapy. There is simply no medical evidence in the record placing any specific restrictions on Elshafe's work activities after the completion of his chemotherapy. No physician has opined that Elshafe's history of chemotherapy causes disabling fatigue and renders him unable to work.

Elshafe argues for the first time in his reply brief that the ALJ improperly disregarded Dr. Jajeh's report of September 12, 2000. This argument is waived. It is too late to make an argument for the first time in a reply brief because the Commissioner is denied an opportunity to respond. Baloun v. Williams, 2002 WL 31426647 at *9 (N.D. Ill. Oct. 25, 200) (Nolan, M.J.). Even if the Court overlooked this waiver and considered the argument on the merits, it would reject it. As explained below, the reasons given by the ALJ in rejecting Dr. Jajeh's opinion are questionable but ultimately any errors are not determinative.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." Hofslien v. Barnhart, 2006 WL 469484, at * 1 (7th Cir. March 1, 2006). A claimant is not disabled simply because his treating physician says so. Dixon, 270 F.3d at 1177. "The patient's regular physician may want to do a favor for a friend and client, and so the treating

physician may too quickly find disability." Id. (quoting Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985)). Dr. Jajeh stated on September 12, 2000 that Elshafe developed a severe side effect to chemotherapy and was "unable to care for himself or to work." (R. 169). Dr. Jajeh concluded: "Please assist this patient to get public aid he is entitled to." Id.

In her credibility analysis, the ALJ discredited Dr. Jajeh's September 12, 2000 statement that Elshafe could not care for himself. (R. 23). The ALJ relied upon the fact that Dr. Jajeh's opinion contradicted Elshafe's statements in February 2001 that he cooked his own meals, leaves his house twice a week, visits with friends and the objective evidence. (R. 127-129). The ALJ did not minimally articulate adequate reasons for rejecting Dr. Jajeh's statement on September 12, 2000 that Elshafe could not care for himself. Elshafe's statements regarding his ability to care for himself in February 2001, two months after his chemotherapy treatment ended, are not inconsistent with Dr. Jajeh's description of Elshafe's condition in September 12, 2000 during chemotherapy treatments. Moreover, Elshafe's statements regarding his condition on September 30, 2000 are consistent with Dr. Jajeh's opinion. (R. 113-19). The ALJ also did not elaborate on her finding that Dr. Jajeh's opinion was inconsistent with the objective evidence by citing to any such evidence in the record. Thus, the ALJ did not make clear what objective evidence she was relying on to form her conclusion.

The ALJ also rejected Dr. Jajeh's statement that Elshafe's suffered severe side effects to the chemotherapy as non-specific. (R. 22). The ALJ noted that Dr. Jajeh did not provide any details on what the adverse reactions were to the treatment. Dr. Jajeh could have provided a description of the adverse response to chemotherapy, but that failure alone does not seem to be a valid basis for rejecting his statement that Elshafe suffered severe side effects to the chemotherapy treatment where

it is well known that chemotherapy can have numerous serious side effects and Dr. Jajeh's opinion was not inconsistent with any other evidence in the record. Compare Luna v. Shalala, 22 F.3d 687, 690 (7th Cir. 1994) (concluding that ALJ did not error in rejecting an examining physician's opinion where physician's report was "cursory in the extreme" and inconsistent with a treating physician's more current findings). Furthermore, the ALJ could have recontacted Dr. Jajeh to obtain a description of the complications or other adverse response to therapy. See 20 C.F.R. § 416.912(e)(1) (instructing the ALJ to recontact a claimant's treating physician "when the report from your medical source . . . does not contain all the necessary information . . . ."); Howell v. Sullivan, 950 F.2d 343, 348 (7th Cir. 1991) (stating "[a]n ALJ has an obligation to develop a full and fair record.").

In the end, any errors regarding the ALJ's rejection of Dr. Jajeh's opinion do not require a reversal or remand. Crediting Dr. Jajeh's opinion would not lead to a different result. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating "[s]o the administrative law judge's opinion is vulnerable. But that is nothing new. No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result."). Dr. Jajeh's comments were made while Elshafe was undergoing chemotherapy and complaining of pain, fatigue, vomiting, diarrhea, and stomach cramps. (R. 113-18, 169). Dr. Jajeh attributed Elshafe's condition to the side effects of chemotherapy. Dr. Jajeh's opinion is limited to the period when Elshafe was undergoing chemotherapy. His treatments ended in December 2000. There is no continuing basis for Dr. Jajeh's opinion of disability after completion of the chemotherapy program. None of Elshafe's treating physicians placed any restrictions on his work-activities after the completion of chemotherapy.

Elshafe also improperly contends for the first time in his reply brief that the ALJ's credibility determination was erroneous because she failed to follow Social Security Ruling 96-7p. Notwithstanding Elshafe's waiver of this issue, the argument fails on the merits. Social Security Ruling 96-7p states that ALJs must provide "specific reasons" for a credibility finding. ALJs must also evaluate the credibility of the claimant's testimony about his symptoms in light of seven factors: (1) daily activities, (2) the location, duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of medication, (5) treatment, (6) other measures used to relieve the pain, and (7) other factors concerning functional limitations. SSR 96-7p. The ALJ considered Elshafe's successful treatment of his lymphoma, his reports of his daily activities, his use of over the counter medications in addition to the objective medical evidence. Put together, that evidence was sufficient to support her conclusion.

Elshafe faults the ALJ for failing to mention Dr. Raymond's February 26, 2001 finding that Elshafe's complaints of "generalized fatigue and abdominal bloating, which change in bowels, [was] likely related to chemotherapy." (R. 191). Elshafe also complains that the ALJ disregarded Dr. Matar's progress notes of 6/25/01 and 10/8/01 which stated respectively, "feels very tired" and "very tired following chemo." (R. 227, 228). The ALJ did not err by failing to mention these statements. The ALJ need not provide a written evaluation of each piece of evidence in the record. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Rather, the ALJ must minimally articulate her analysis of the evidence so that this Court can follow her reasoning. Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). The ALJ provided an adequate explanation for her finding that the objective medical evidence did not support Elshafe's claim of total disability. Even if Drs. Raymond and Matar attributed Elshafe's tiredness to his prior chemotherapy treatments, they did not opine that Elshafe's

history of chemotherapy impaired him from engaging in substantial gainful activity or impose any specific limitations on his ability to work.

C.  Vocational Expert's Testimony

Elshafe asserts in a conclusory fashion that the ALJ improperly disregarded the Vocational Expert's testimony. Elshafe has not developed his argument in any detail. Elshafe simply quotes the following exchange from the hearing:

> Q.  If I were to assume Plaintiff's statements regarding his restrictions and limitations are accurate in all respects, including his statements that he needs to lie down or sleep several times a day up to most of the day, I would assume there would be at least no full-time jobs such a person could perform. Is that correct?
>
> A.  That is correct, Your Honor.

(R. 66). It is not the Court's responsibility to construct arguments for the parties. Because this argument was not developed in a meaningful way, it is waived.

In any event, the ALJ committed no error in declining to rely on the vocational expert's response to the above hypothetical because that hypothetical was based on limitations the ALJ justifiably rejected. As indicated previously, the ALJ appropriately concluded that Elshafe's testimony was not supported by the medical record and lacked credibility. In response to the first hypothetical, the VE testified that Elshafe could perform his past relevant work as a package handler for UPS. (R. 65). The VE further testified that Elshafe could perform 65,494 assembler positions, 24,457 inspecting positions, and 124,240 janitor positions. (R. 64-65). The VE confirmed that these jobs would be available with the additional requirement of no regular general public contact. (R. 66). The first hypothetical question posed to the VE with the additional requirement of no general public contact fairly addressed the limitations that the ALJ found to be supported by the medical evidence and therefore, the ALJ's conclusion was based on substantial evidence.

D.  Exclusion of Witnesses

Elshafe also argues that the ALJ erred in suggesting that he need not call witnesses to testify to the "same stuff" as Elshafe and then finding Elshafe's testimony incredible. Elshafe states that he had two witnesses (Alice Z. Mitic and Eva Moneim) at the hearing who would have testified in detail about his daily activities, fatigue, and pain. The following colloquy occurred:

> ALJ: You wanted to call a witness?
>
> Atty: I would like to call the –
>
> ALJ: Frankly, I really don't need to hear the same –
>
> Atty: No. Okay
>
> ALJ: – the same stuff.
>
> Atty: Okay.

(R. 62-63). Elshafe's counsel did not object or further indicate that he wished to call Ms. Mitic and Ms. Moneim to corroborate Elshafe's testimony.

The Court rejects Elshafe's contention that the ALJ prevented him from calling witnesses. Contrary to Elshafe's assertion, the ALJ did not instruct Elshafe's counsel not to call witnesses. Instead, the ALJ told Elshafe's counsel that she did not need to hear the "same stuff." (R. 62-63). The ALJ's indication that she did not need to hear the same testimony from other witnesses does not amount, as Elshafe suggests, to preventing Elshafe from calling corroborative witnesses or to an assurance that the ALJ intended find Elshafe's testimony credible. If counsel wanted the additional witnesses to testify, he should have pressed the issue. Counsel also did not make or seek to make an offer of proof. Elshafe was not denied the opportunity to call witnesses. Jones v. Chater, 1996 WL 390246, at *6 (N.D. Ill. July 9, 1996) (finding no error where ALJ "stated that he did not want

to hear any testimony" from claimant's husband and counsel did not object, indicate that she wished to call claimant's husband as a witness, or make an offer of proof.). Moreover, the ALJ did not find Elshafe's testimony incredible because it lacked corroboration. Testimony consistent with Elshafe's testimony would still have been inconsistent with the objective medical record which included no limitations on Elshafe's ability to work post-chemotherapy. Since the ALJ justifiably discredited Elshafe's testimony regarding the severity of his complaints, the fact that additional witnesses would have given corroborating testimony would not have led to a different result.

Furthermore, the circumstances here differ in significant respects from the errors committed by the ALJs in Johns v. Sullivan, 1991 WL 217045 (4th Cir. Oct. 28, 1991) and Lopez v. Secretary of the Dep't of Health and Human Services, 728 F.2d 148 (2d Cir. 1984). In those cases, the courts held that the claimant was denied a fair hearing when the ALJ declined to hear corroborative testimony from the claimant's witness, told the claimant that his/her testimony would be accepted, and then rejected the testimony as incredible. Lopez, 728 F.2d at 150 (holding "it was simply unfair to preclude the testimony of a sole corroborative witness as cumulative by assuring appellant that her testimony would be accepted, and then rejected it as incredible."); Johns, 1991 WL 217045, at * 3 (stating "[it] seems to us that the administrative law judge below committed precisely the same error [as the ALJ in Lopez] by first assuring Johns that he did not question her testimony, and later rejecting it in his written findings as incredible."). The particular facts the courts viewed as problematic in those cases are not present in this case. Here, Elshafe was represented by counsel at the hearing. In Lopez and Johns, the claimants appeared *pro se* at the hearings. Johns, 1991 WL 217045, at *2 (noting that the "exclusion [of claimant's sister-in-law] could have been rectified had counsel been present.") Because Elshafe was represented by counsel at the hearing, the ALJ was

-16-

entitled to presume that he had "made his best case." Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988) (citing Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir.1987)). Importantly, while the ALJs in Lopez and Johns stated at the hearings that they would accept the claimants' testimony, the ALJ offered no similar assurance in this case.

E.      Closed Period of Benefits

Elshafe's final argument is that the ALJ erred in failing to consider a closed period of benefits. Elshafe claims that he is entitled to a closed period of benefits from August 2000 through July 2001, encompassing the chemotherapy treatment and recovery.[4] Substantial evidence in the record establishes that a closed period of benefits from August 30, 2000 to July 31, 2001 is not appropriate. No medical evidence in the record indicates that disabling side effects of chemotherapy lasted until July 31, 2001. No physician placed any restrictions on Elshafe's work-related activities after the completion of chemotherapy in December 2000. For example, Dr. Raymond opined in February 2001 that Elshafe demonstrated normal functioning. (R. 189-91). Dr. Matar noted that Elshafe's lymphoma was in remission in June 2001. (R. 227). Dr. Matar noted Elshafe's complaints of fatigue in June and October 2001, but did not opine that Elshafe suffered any residual functional limitations from the chemotherapy treatment and did not place any limitations on Elshafe's functioning. (R. 227, 228).

## **CONCLUSION**

For the reasons stated, Plaintiff's Motion for Summary Judgment or Remand [13-1] is denied, and the Commissioner's Motion for Summary Judgment [15-1] is granted. The Clerk is directed to enter judgment in favor of the Commissioner and against the Plaintiff pursuant to Federal

---

[4] It appears that Elshafe's first chemotherapy treatment occurred on August 30, 2000 and his last one took place on December 19, 2000 (R. 218, 248).

Rule of Civil Procedure 58.

**E N T E R:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**


**Dated: March 29, 2006**